IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-00928-PAB-SKC

STEVEN BLANCO, SR. & MARISELA BLANCO, as co-personal representatives of the Estate of Steven Blanco, Jr.,
MARISELA BLANCO, individually, and
STEVEN BLANCO, SR., individually,

　　　Plaintiffs,

v.

HCA-HEALTHONE, LLC, a/k/a Presbyterian/St. Luke's Medical Center and a/k/a Rocky Mountain Hospital for Children,
THIYAGARAJAN R. MEYAPPAN, MD, a/k/a T. Raju Meyappan, MD,
OBSTETRIX MEDICAL GROUP OF COLORADO, PC,
DOE CORPORATIONS OR COMPANIES #2-#5,
DOE PHYSICIANS #1-#10,
DOE NURSES #1-#10, and
DOE ADMINISTRATORS OF THE MEDICAL ENTITY DEFENDANTS #1-#10,

　　　Defendants.

## ORDER

This matter is before the Court on Defendant HCA-HealthONE, LLC, d/b/a Presbyterian/St. Luke's Medical Center, Rocky Mountain Hospital for Children's Motion to Dismiss Plaintiffs' First, Second, and Sixth Claims [Docket No. 99] and Defendants' Joint Motion to Dismiss Plaintiffs' Claims for Negligent Infliction of Emotional Distress [Docket No. 102]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

I. **BACKGROUND**

This case arises out of the death of Steven Blanco, Jr., the two-year-old son of plaintiffs Marisela Blanco and Steven Blanco, Sr., on March 29, 2017.[1]  On March 29, 2017, at 3:30 a.m., Blanco Jr. arrived at the Rocky Mountain Hospital for Children ("Rocky Mountain"), which is located within Presbyterian/St. Luke's Medical Center ("St. Luke's") in Denver, Colorado.  Docket No. 62 at 11, ¶ 50.  Both St. Luke's and Rocky Mountain are trade names of defendant HCA-HealthONE, LLC ("HCA").  *Id*. at 7, ¶¶ 25, 27.[2]  Defendant Dr. Thiyagarajan R. Meyappan ("Dr. Meyappan") was a pediatric critical care physician performing medical services that night.  *Id*. at 8, ¶ 33.  Defendant Obstetrix Medical Group of Colorado, PC ("Obstetrix") employed Dr. Meyappan and contracted with HCA to place Dr. Meyappan at St. Luke's and/or Rocky Mountain.  *Id*. at 8-9, ¶ 35.  At time of admission, Blanco Jr. was suffering from a bacterial infection

---

[1] These facts are drawn from the operative complaint, Docket No. 62, and are taken as true in considering the motions to dismiss.  *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

[2] The complaint is internally inconsistent as to whether HCA, St. Luke's, and Rocky Mountain are alleged to be separate legal entities and, accordingly, separate defendants.  *Compare* Docket No. 62 at 1 (caption using "a/k/a" to connect HCA, St. Luke's, and Rocky Mountain), *and id*. at 7, ¶¶ 25, 27 (alleging that St. Luke's and Rocky Mountain are trade names of HCA), *with id*. at ¶¶ 26, 28 (referring to St. Luke's and Rocky Mountain as separate defendants).  Although the parties have not focused on this question, generally speaking, use of a trade name does not create a distinct legal entity that can be sued.  *Cf. Boxer F2, L.P. v. Flamingo W., Ltd.*, No. 14-CV-00317-PAB-MJW, 2016 WL 3355566, at *10 (D. Colo. June 17, 2016).  The parties' briefing likewise assumes that HCA is the properly sued entity.  *See* Docket No. 99 at 1 (HCA's motion to dismiss describing HCA as "d/b/a Presbyterian/St. Luke's Medical Center and Rocky Mountain Hospital for Children"); Docket No. 103 (plaintiffs' response raising no objection).  Thus, for purposes of this order, the Court construes St. Luke's and Rocky Mountain to be the same entity and same defendant as HCA.

and showing symptoms of fever, cough, rhinorrhea, respiratory difficulty, emesis, intermittent vomiting and dry cough, and respiratory distress. *Id*. at 11, ¶¶ 49, 54. While at Rocky Mountain, Blanco Jr. had two episodes of desaturation and a change in neurologic status. *Id*. at 12, ¶ 55. Blanco Jr. died about four hours later due to complications of sepsis and thromboembolic disease. *Id*. at 11, ¶ 47.

On March 28, 2019, plaintiffs[3] filed this suit. Docket No. 1. In the operative complaint, plaintiffs assert nine claims for relief: (1) direct negligence against HCA; (2) vicarious liability against HCA; (3) "direct liability" against Obstetrix; (4) vicarious liability against Obstretrix; (5) medical negligence against Dr. Meyappan, Doe Physicians #1-10, and Doe Nurses #1-10; (6) negligent hiring against HCA, Obstetrix, and "one or more Doe Corporations or Companies"; (7) negligent infliction of emotional distress on Marisela Blanco against all defendants; (8) negligent infliction of emotional distress on Steven Blanco, Sr. against all defendants; and (9) wrongful death[4] against all defendants. *See* Docket No. 62 at 22-30, ¶¶ 127-97.

On December 16, 2019, HCA filed a motion to dismiss the negligence, vicarious liability, and negligent hiring claims brought against it. Docket No. 99. The same day, HCA, Obstetrix, and Dr. Meyappan filed a joint motion to dismiss the negligent infliction

---

[3] Plaintiffs sue in both their individual capacities and as co-personal representatives of the Estate of Steven Blanco, Jr. Docket No. 62 at 1.

[4] The Court assumes, as HCA does, that the section of plaintiffs' complaint captioned "Wrongful Death" is intended to state an independent claim for relief despite not being labeled as an independent claim. *See* Docket No. 62 at 29-30, ¶¶ 192-97; Docket No. 99 at 2.

3

of emotional distress claims against them. Docket No. 102.[5] Plaintiffs filed a combined response, Docket No. 103, and defendants filed replies. Docket Nos. 109, 110.[6]

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable

---

[5] Dr. Jonathan L. Brandon joined this motion to dismiss; however, plaintiff subsequently dismissed with prejudice all claims against Dr. Brandon. Docket No. 104.

[6] On June 16, 2020, defendants moved for the Court to refer the motions to dismiss to the assigned magistrate judge for a report and recommendation. Docket No. 137. This motion is denied as moot.

4

legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted ).

## III. ANALYSIS

### A. HCA's Motion to Dismiss

HCA moves to dismiss plaintiffs' claims for relief against it for direct negligence, vicarious liability, and negligent hiring.  Docket No. 99.

#### *1. Direct Negligence and Vicarious Liability*

Plaintiffs claim that HCA is directly liable for negligence because HCA breached the duty of care it owed to Blanco Jr.  Docket No. 62 at 22-24, ¶¶ 127-45.  Plaintiffs also claim that HCA is vicariously liable for the negligence of its employees or contractors who treated Blanco Jr.  *Id*. at 24, ¶ 146-50.  HCA argues that these claims are barred by Colorado's corporate practice of medicine doctrine.  Docket No. 99 at 3-5.  This common-law doctrine "shields corporations for vicarious liability for the negligent acts of their physician employees." *Estate of Harper ex rel. Al-Hamim v. Denver Health and Hosp. Auth.*, 140 P.3d 273, 275 (Colo. App. 2006).  Although the Colorado Supreme Court, at one time, read an exception into this doctrine for professional corporations, *see Pediatric Neurosurgery, P.C. v. Russell*, 44 P.3d 1063 (2002), the legislature overruled that exception by enacting Colo. Rev. Stat. § 12-240-138(1)(f), which states that "[n]othing in this article . . . shall be construed to cause a professional service corporation to be vicariously liable . . . for the professional

negligence or other tortious conduct of a physician." *See Estate of Harper*, 140 P.3d at 276-77.

Plaintiffs respond that (1) Nebraska law, not Colorado law, governs these claims, and (2) even if Colorado law governs, the corporate practice of medicine doctrine does not bar these claims. Docket No. 103 at 4-9. Because the choice-of-law analysis impacts plaintiffs' claims for negligent infliction of emotional distress as well, the Court begins there.

### i. Choice of Law

A federal court sitting in diversity applies the choice-of-law rules of the state in which the district is located – here, Colorado. *Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1219 (10th Cir. 1997). In resolving choice-of-law issues in tort actions, Colorado follows the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws. *Hawks v. AGRI Sales, Inc.*, 60 P.3d 714, 715 (Colo. App. 2001). Courts applying this test evaluate where the injury occurred; where the injury-causing conduct occurred; the residence, place of incorporation, and place of business of the parties; and where the parties' relationship is centered. Restatement (Second) of Conflict of Laws § 145(2).

Here, the parties' contacts support application of Colorado law to plaintiffs' claims. Both the injury suffered by plaintiffs – the death of Steven Blanco, Jr. – and the injury-causing conduct – defendants' alleged negligence – occurred at HCA's hospitals in Colorado. *See* Docket No. 62 at 11, ¶¶ 47-54. Although plaintiffs reside in Nebraska, all defendants are incorporated in, conduct business in, or reside in

Colorado. *See id.* at 3-11, ¶ 12-45. And, as plaintiffs concede, "much of the relationship between the parties occurred in Colorado." *See* Docket No. 103 at 8. Thus, Colorado law controls plaintiffs' claims. *See Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1211 (10th Cir. 2001) ("Because the injury occurred in Colorado, the alleged negligent conduct occurred in Colorado, and the relationship between [the parties] is centered in Colorado, Colorado law controls.").

Plaintiffs make two arguments against this conclusion, neither of which is persuasive. First, plaintiffs argue that an additional factor the Court should consider is "the purpose sought to be achieved by the relevant tort rules of the interested states." *See* Docket No. 103 at 5 (quoting Restatement (Second) of Conflict of Laws § 145, cmt. c). Plaintiffs contend that Nebraska's interest in ensuring that tort victims are fully compensated outweighs Colorado's interest in preventing corporate control of physicians' medical judgment. Plaintiffs place more weight on this argument than it can bear. Although plaintiffs describe this consideration as a "highly important factor," it is not actually a "factor" in the analysis at all. As the Court has already discussed, the factors to be considered in the analysis are the four contact factors established in § 145(2). The "purpose sought to be achieved by the relevant tort rules" is mentioned only in a comment, with the note that this consideration "must not be overemphasized." *See* Restatement (Second) of Conflict of Laws § 145, cmt. c. Indeed, the Restatement notes that, where "one state is obviously that of the applicable law," it is possible to resolve the choice-of-law question without resorting to this consideration at all. *See id*. That is the case here, where the factors point toward the application of Colorado law.

7

Plaintiffs cite no case where a court applied the law of a state where the only contact to that state was one party's citizenship based on the purposes of that state's tort rules. Thus, the Court is not persuaded that plaintiffs' preferred approach is consistent with either the Restatement or Colorado's choice-of-law principles.

Second, plaintiffs argue that the first two contact factors favor Nebraska because Blanco Jr.'s medical issues began while he was in Nebraska and because HCA agreed to accept Blanco Jr. as a patient when he was in Nebraska. Docket No. 103 at 7. This theory is not supported by any allegations in the complaint. The crux of plaintiffs' claims is not that HCA lied about the medical care that it would provide for Blanco Jr.; rather, plaintiffs claim that HCA's treatment of Blanco Jr. was negligent. *See, e.g.*, Docket No. 62 at 24, ¶ 143 (alleging that HCA "negligently failed to have systems in place" to appropriately evaluate and care for Blanco Jr.). Colorado was the site of that allegedly negligent treatment. Thus, the Court rejects the argument that either factor weighs in favor of Nebraska, and will apply Colorado law to plaintiffs' claims.

### ii. Application of Colorado Law

As already discussed, Colorado's corporate practice of medicine doctrine means that HCA cannot be held vicariously liable for negligent acts of its physician employees. *See Estate of Harper*, 140 P.3d at 275. HCA argues that this rule entirely bars plaintiffs' claims for direct negligence and vicarious liability against HCA. Docket No. 99 at 4-5.

Generally, a negligence claim requires a plaintiff to prove that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the plaintiff was

injured, and (4) the defendant's breach of the duty caused the injury. *Ryder v. Mitchell*, 54 P.3d 885, 889 (Colo. 2002). Vicarious liability, in contrast, allows a plaintiff to hold a principal or employer liable for the breach of a duty owed to the plaintiff by an agent or employee of the defendant. *Settle v. Basinger*, 411 P.3d 717, 723 (Colo. App. 2013).

Both case law and the statutory text indicate that the corporate practice of medicine doctrine only prevents entities like HCA from being subject to vicarious liability for a physician's tortious conduct. *See Estate of Harper*, 140 P.3d at 276 (noting the "exception to the corporate practice of medicine doctrine [is] when a hospital committed independent acts of negligence"); *Hall v. Frankel*, 190 P.3d 852, 861 (Colo. App. 2008); Colo. Rev. Stat. § 12-240-138(1)(f) ("Nothing . . . shall be construed to cause a professional service corporation to be vicariously liable . . . for the professional negligence or other tortious conduct of a physician . . . ."). The complaint alleges that HCA committed independent acts of negligence by, for example, "fail[ing] to have the appropriate medical diagnostic and treatment equipment and procedures and protocol in place" for their employees to properly treat Blanco Jr. *See* Docket No. 62 at 17, ¶ 103. Thus, the corporate practice of medicine doctrine cannot be used to defeat plaintiffs' direct negligence claim against HCA.

HCA cursorily argues that plaintiffs' claim for direct negligence fails because the allegations in support of the claim are conclusory. Docket No. 99 at 5. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020). In making this

determination, the Court does not consider legal conclusions couched as factual allegations. See *DTC Energy Group, Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1185 (D. Colo. 2019). Once the conclusory allegations are stripped out, not much remains that would support a direct negligence claim against HCA. The complaint alleges that Blanco Jr. died as a result of a bacterial infection. See Docket No. 62 at 11, ¶ 48. The complaint further alleges that Blanco Jr. "had two episodes of desaturation and a change in neurologic status" while at HCA's hospital. See *id*. at 12, ¶ 55. The remainder of the factual allegations focus on actions taken (or not taken) by the physicians and nurses treating Blanco Jr. See *id*. at 13-17, ¶¶ 68-100.

These facts are just barely enough to state a claim. The complaint contends that HCA had duties to, among other things, (1) "provide its patients specialized care in the area of pediatrics," (2) "provide that trauma patients be treated . . . appropriate to the patient's level of injury," and (3) "follow federal regulation guidelines . . . to facilitate a seamless patient-flow system," *see id.* at 12-13, ¶¶ 56, 62, 64, which HCA allegedly breached by "fail[ing] to have the appropriate medical diagnostic and treatment equipment and procedures and protocol in place" for their employees to properly treat Blanco Jr. See *id*. at 17, ¶ 103. The Court draws the reasonable inference that the episodes of desaturation and change in neurologic status suffered by Blanco Jr. at Rocky Mountain were caused by a breach of one or more of the duties outlined by plaintiffs. Notably, HCA fails to make any argument as to why these allegations do not establish a claim for negligence other than that the allegations are "vague." It may ultimately be the case that HCA cannot be liable for direct negligence because the

duties identified by plaintiffs are not legally cognizable. *See Keller v. Koca*, 111 P.3d 445, 448 (Colo. 2005) (existence of a legal duty is a question of law). But the Court will not construct that argument on HCA's behalf.[7] Accordingly, the direct negligence claim against HCA survives.

The vicarious liability claim is trickier. As discussed, plaintiffs cannot sustain a vicarious liability claim against HCA based on the alleged tortious conduct of HCA's employed or contracted physicians. The question becomes whether the vicarious liability claim can stand based on allegations against other employees of HCA – specifically, HCA's nurses. The complaint alleges repeatedly that "one or more of" the defendant physicians and nurses provided Blanco Jr. with inadequate treatment. *See* Docket No. 62 at 13-17, ¶¶ 68-100. Plaintiffs claim that the negligence of these employees should be imputed to HCA. *See id*. at 24, ¶ 150. However, neither side devoted any of their briefing to answering the question of whether a hospital may be held vicariously liable for the negligent acts of its nurses or other employees under, for example, the master-servant doctrine. *See Settle*, 411 P.3d at 724. The Court concludes that, on this record, HCA has not met its burden to show that it is entitled to full dismissal of the vicarious liability claim. Accordingly, the Court will dismiss the vicarious liability claim to the extent that it is premised on negligent acts of HCA's physicians, but will allow the claim to proceed to the extent that it is premised on negligent acts of HCA's nurses or other non-physician employees.

---

[7] HCA may, of course, argue at summary judgment that plaintiffs have failed to identify a legally cognizable duty that HCA owed plaintiffs.

### *2. Negligent Hiring and Supervision*

Plaintiffs claim that HCA is liable for negligent hiring, training, supervising, and/or retaining one or more agents or employees. Docket No. 62 at 27, ¶¶ 172-175.[8] HCA argues that the complaint lacks sufficient factual allegations to state a claim for negligent hiring. Docket No. 99 at 5-6.

A defendant owes a plaintiff a legal duty in hiring employees where an employer had reason to believe that, because of "of some attribute of character or prior conduct, [the employee] would create an undue risk of harm [to the plaintiff] in carrying out his or her employment responsibilities." *Raleigh v. Performance Plumbing and Heating*, 130 P.3d 1011, 1016 (Colo. 2006); *Connes v. Mollala Transp. Sys., Inc.*, 831 P.2d 1316, 1321 (Colo. 1992). Similarly, a defendant is liable for negligent supervision where "the defendant knew his employee posed a risk of harm to the plaintiff and that the harm that occurred was a foreseeable manifestation of that risk." *Keller*, 111 P.3d at 446; *see also Destefano v. Grabrian*, 763 P.2d 275, 288 (Colo. 1988) (an employer is liable who "knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm"). The scope of these duties "depends on the employee's anticipated degree of contact with other persons in carrying out the duties of employment." *Moses v. Diocese of Colo.*, 863 P.2d 310, 328 (Colo. 1993).

HCA argues that the complaint is devoid of factual allegations from which the Court could conclude that HCA breached a duty to train or supervise its employees.

---

[8] This claim is also asserted against Obstetrix. As Obstetrix has not moved for dismissal, the claim against Obstetrix is not before the Court.

Docket No. 99 at 5-6; *see also Keller*, 111 P.3d at 448 (existence of a legal duty is a question of law). The Court agrees. The complaint alleges that "[o]ne or more of" HCA's employees who cared for Blanco Jr. were "negligently hired, trained, improperly supervised and monitored, and/or should not have been retained as agents or employees." Docket No. 62 at 27, ¶ 174. However, this allegation is a legal conclusion couched as a factual allegation, which the Court need not accept in determining a motion to dismiss. *See DTC Energy*, 420 F. Supp. 3d at 1185. The complaint is silent as to how or why HCA knew or should have known that either the named defendant-physicians the unnamed members of its medical staff had "attribute[s] of character or prior conduct" that presented Blanco Jr. an undue risk of harm, and that HCA accordingly should have either not hired or more closely supervised those employees. *See Raleigh*, 130 P.3d at 1016; *Moses*, 863 P.2d at 327.

Plaintiffs offer two responses. First, they point to some allegations in the complaint that they contend demonstrate the negligence of HCA and its employees. *See* Docket No. 103 at 16. However, negligent hiring and negligent supervision are direct torts, meaning that a defendant's liability cannot be based on the negligent acts of others. *Cf. Settle*, 411 P.3d at 723. It is not enough for plaintiff to allege that HCA's employees were negligent; rather, plaintiffs must show that HCA owed Blanco Jr. a legal duty in hiring or supervising its employees and that it breached that duty. While a hospital may be liable for negligence in failing to adequately supervise or review the performance of its medical staff, *see Camacho v. Mennonite Bd. of Missions*, 703 P.2d 598, 600-01 (Colo. App. 1985), it is the plaintiffs' burden to present evidence (or, at this

13

stage, allegations) to show that the hospital's hiring, supervising, or reviewing procedures were inadequate.[9] Because the allegations relied on by plaintiffs do not meet that burden, the argument is misplaced. Second, plaintiffs complain that dismissing the claim at this stage would support a "cynical strategy to escape liability" by HCA. Docket No. 103 at 17. Plaintiffs contend that this result makes it impossible for them to obtain any discovery about HCA's staff members and its policies and procedures. But plaintiffs have it backwards. Plaintiffs could have proceeded to discovery on their direct negligence claim against HCA and then, assuming that discovery supported a factual basis for a negligent hiring or supervision claim against HCA, plaintiffs could move to amend the complaint to allege such a claim. Instead, plaintiffs pled a negligent hiring claim absent any factual basis to support such a claim. Accordingly, dismissal of the claim is warranted at this stage.[10]

---

[9] Plaintiffs contend that the Court may only dismiss the case if there is "no set of facts in support of the claim which would entitle him to relief." *See* Docket No. 103 at 3 (quoting *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990)). This pleading standard – derived from *Conley v. Gibson*, 355 U.S. 41 (1957) – has been overruled by the Supreme Court. *See Twombly*, 550 U.S. at 563 (holding that "this famous observation has earned its retirement").

[10] Plaintiffs suggest that dismissal of this claim should be without prejudice. Docket No. 103 at 17. As relevant here, Fed. R. Civ. P. 41(b) provides that a dismissal of a claim pursuant to Fed. R. Civ. P. 12(b)(6) "operates as an adjudication on the merits" "[u]nless the dismissal order states otherwise." This language has been interpreted to mean that a district court may dismiss a claim without prejudice "when motivated by equitable considerations." *See* Arthur R. Miller, *Fed. Prac. & Proc.* § 2373 (3d ed. Aug. 2020 update). The Court is not persuaded that equitable considerations support dismissal without prejudice because plaintiffs still have a pending negligence claim against HCA. Thus, although plaintiffs are foreclosed from holding HCA liable for Blanco Jr.'s death on a theory of negligent hiring or supervision, they still have an avenue available to prove that HCA was negligent.

14

### B. Joint Motion to Dismiss NIED Claims

Each plaintiff brings a claim against defendants for negligent infliction of emotional distress ("NIED"). Docket No. 62 at 27-29, ¶¶ 176-89. In Colorado, a plaintiff can establish an NIED claim by showing that (1) the defendant's negligence created an unreasonable risk of physical harm and caused the plaintiff to be put in fear for his or her own safety, (2) this fear had physical consequences or resulted in long-continued emotional disturbance, and (3) the plaintiff's fear caused the damages sought. *Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496-97 (Colo. App. 2011). A threshold inquiry, however, is whether the plaintiff can show that he or she suffered physical injury or was in the "zone of danger." *Id*. at 497. A plaintiff's claim fails if the plaintiff observed injury to a family member but was in no personal danger. *Colwell v. Mentzer Investments, Inc.*, 973 P.2d 631 (Colo. App. 1998).

HCA, Dr. Meyappan, and Obstetrix argue that plaintiffs' NIED claims fail because plaintiffs were in no personal danger. Docket No. 102 at 4-5. The Court agrees. Although the complaint alleges that each plaintiff was "physically present" as their son suffered from a bacterial infection and ultimately passed away, there are no allegations that the plaintiffs were in danger themselves. *See* Docket No. 62 at 27-29, ¶¶ 176-89. Without such a showing, they cannot recover for negligent infliction of emotional distress under Colorado law. *See Colwell*, 973 P.2d at 638; *Ratcliff v. Good Times Restaurants, Inc.*, No. 19-cv-00077-LTB-MEH, 2019 WL 2774217, at *5 (D. Colo. July 2, 2019) (dismissing NIED claim where plaintiff failed to allege that she was "personally in danger").

Plaintiffs argue that the Court should apply Nebraska law instead. Docket No. 103 at 9-12. Unlike Colorado, Nebraska follows the "bystander rule," which allows an NIED plaintiff who was not in personal danger to recover "upon a showing of marital or intimate familial relationship with a victim who was seriously injured or killed as a result of the proven negligence of a defendant." *James v. Lieb*, 375 N.W.2d 109, 117 (Neb. 1985). Once more plaintiffs argue that "the purpose sought to be achieved by the relevant tort rules of the interested states" requires the Court to apply Nebraska law and allow their claim to proceed. *See* Restatement (Second) of Conflict of Laws § 145, cmt. c. However, as already discussed, this consideration does not outweigh the contact factors, three of which point toward applying Colorado law and none point toward applying Nebraska law. Essentially, plaintiffs are making a policy argument in favor of following the bystander rule instead of the zone-of-interests rule. *See* Docket No. 103 at 12 (describing Colorado law as "proven . . . to be an anachronistic relic"). But the choice-of-law analysis does not permit the Court to reject the law of the state with the most significant relationship to the dispute in favor of whatever law it deems best. Thus, the Court will decline to apply Nebraska law.

Because Colorado law does not permit NIED claims brought by plaintiffs who were not in physical danger to proceed, the Court will dismiss plaintiffs' NIED claims.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant HCA-HealthONE, LLC, d/b/a Presbyterian/St. Luke's Medical Center, Rocky Mountain Hospital for Children's Motion to Dismiss Plaintiffs'

First, Second, and Sixth Claims [Docket No. 99] is **GRANTED IN PART** and **DENIED IN PART**]. It is further

ORDERED that Defendants' Joint Motion to Dismiss Plaintiffs' Claims for Negligent Infliction of Emotional Distress [Docket No. 102] is **GRANTED**. It is further

ORDERED that plaintiffs' Second Claim is **DISMISSED IN PART WITH PREJUDICE** as consistent with this order. It is further

ORDERED that plaintiffs' Sixth Claim against defendant HCA is **DISMISSED WITH PREJUDICE**. It is further

ORDERED that plaintiffs' Seventh and Eighth Claims are **DISMISSED WITH PREJUDICE**. It is further

ORDERED that defendants' Forthwith Motion for Referral of Motions to Dismiss to Magistrate Judge for Fact Finding and Recommendations [Docket No. 137] is **DENIED AS MOOT**.

DATED September 28, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge