IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-00928-PAB-SKC

STEVEN BLANCO, SR., and
MARISELA BLANCO, both individually and as co-personal representatives of the Estate of Steven Blanco, Jr.,

    Plaintiffs,

v.

HCA-HEALTHONE, LLC;
HEALTHONE, INC.;
P/SL PRESBYTERIAN/ST. LUKE'S MEDICAL CENTER, INC.;
ROCKY MOUNTAIN HOSPITAL FOR CHILDREN AT PSL;
THIYAGARAJAN R. MEYAPPAN, MD;
OBSTETRIX MEDICAL GROUP OF COLORADO;

    Defendants.

---

ORDER GRANTING MOTION TO MEET *EX PARTE* [#149]

---

This case arises out of the death of Steven Blanco, Jr., the two-year-old son of plaintiffs Marisela Blanco and Steven Blanco, Sr., on March 29, 2017. Blanco Jr. died due to complications of sepsis and thromboembolic disease after presenting at the Rocky Mountain Hospital for Children. [#62 at ¶47.] In relevant part, Plaintiffs bring a claim against Defendants for wrongful death, alleging Defendants' failure to provide appropriate medical care was the proximate cause of Blanco Jr.'s death. [#62 at ¶¶3, 5, 120, 124, 135, 191-97, 210, and 213.2.]

1

This matter is before the Court on Defendants' motion requesting an *ex parte* interview with Sarah Mengshol, M.D., based on *Reutter v. Weber*, 179 P.3d 977 (Colo. 2007). [#149.][1] Dr. Mengshol is a pathologist who performed an autopsy on Blanco Jr. The Court has reviewed the briefing and applicable law. No hearing is necessary.

## Analysis

Defendants argue a *Reutter* interview is appropriate in this case for three primary reasons: (1) Plaintiffs waived the physician-patient privilege concerning Dr. Mengshol by filing this lawsuit asserting a claim for wrongful death; (2) Dr. Mengshol conducted the autopsy in consultation with Dr. Meyappan, a Defendant in this case; and (3) she does not possess any residually privileged information. [*See generally* #149.] Plaintiffs oppose the motion. [#150.] They argue: (1) there is no federal law allowing for the interview; (2) the Court has "no power over the physician to force such a conversation to actually occur . . .;" (3) the Health Insurance Portability and Accountability Act (HIPAA) "prevents the unauthorized disclosure of protected patient information;" (4) an *ex parte* interview would be unreliable and lead to discovery disputes; and (5) Defendants should depose Dr. Mengshol instead.

Each of Plaintiffs' arguments are perplexing because none directly address the glaringly applicable authority which allows the interview Defendants seek. *See Reutter, supra*; *see also Samms v. District Court, Fourth Judicial Dist. of State of Colo.*, 908 P.2d 520 (Colo. 1995). Contrary to Plaintiffs' assertion, no federal law

---

[1] The motion was referred to the magistrate judge.

2

corollary is necessary because this issue is governed by state law. Plaintiffs assert only state law claims and jurisdiction is premised upon 28 U.S.C. § 1332. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir.1995) (as to state causes of action, a federal court should look to state law in deciding privilege questions); Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Plaintiffs cite no authority in support of their argument that some "federal law corollary" must apply.

Ultimately, the matter presented is straightforward. Plaintiffs asserted a wrongful death claim and allege "[t]he collective and individual acts and omissions of Defendants proximately caused Steven Jr.'s death." [#62 at ¶4.] Plaintiffs produced the autopsy report to Defendants without redactions or a privilege log identifying privileged information. [#149 at p.5.] Thus, Plaintiffs have waived any physician-patient privilege or privacy rights related to the autopsy or the cause of death by placing those matters squarely at issue in this litigation.[2] Moreover, the Court finds Dr. Mengshol's role in conducting the autopsy after Dr. Meyappan consulted with her renders the "in consultation with" exception to the physician-patient privilege applicable. Colo. Rev. Stat. § 13-90-107(1)(d)(II).

---

[2] No party has addressed whether the physician-patient privilege applies to a physician who performs an autopsy. This Court was unable to find any applicable authority. But there is some suggestion Colorado state trial courts have determined the physician-patient privilege does not apply to autopsy physicians. *See, e.g.,* Colorado Springs Health Partners, P.C.'s Motion to Conduct Ex Parte Interviews with Delivery Room Health Care Providers, 2004 WL 5640034, at ¶19 (Colo. Dist. Ct. Oct. 22, 2004) (collecting Colorado state trial court cases).

The arguments of Plaintiffs' counsel border on specious. This is first demonstrated by the argument that federal law somehow controls. Counsel cites no authority for this proposition, and ample case law indicates state law controls the subject of privilege in this diversity action which only asserts state law claims.

Second, while counsel references HIPAA, he does so only generally. There are no citations to specific sections of HIPAA at all. Nor does counsel cite any authority for the proposition that HIPAA abrogates the holdings in *Reutter* and *Samms*. The Court has found no such authority.

Third, counsel argues the Court has "no power over the physician to force such a conversation to actually occur . . .." But Defendants do not seek an order *requiring* Dr. Mengshol to sit for an *ex parte* interview. They seek only an order allowing them to conduct the interview. Applicable law is clear that Dr. Mengshol may decline to participate in an *ex parte* interview if she chooses. *Samms*, 908 P.2d at 528.

And Fourth, counsel argues an *ex parte* interview would be unreliable and lead to discovery disputes, and Defendants should depose Dr. Mengshol instead. This too flies in the face of controlling law. *Id.* at 526 ("Personal interviews are an accepted informal method of discovery. . . . A rule permitting informal communications between a defense attorney and a plaintiff's treating physician promotes the discovery process by assuring that both parties have access to an informal, efficient, and cost-effective method for discovering facts relevant to the proceedings. . . .A

contrary rule would encourage resort to expensive and time-consuming formal discovery methods when such methods could be avoided.") (Citations omitted.)

On this record, the Court finds little potential for residually privileged information to be divulged in an *ex parte* interview of Dr. Mengshol—Plaintiffs have not even claimed any residually privileged information associated with her. Plaintiffs have failed to meet their burden to show the "in consultation with" exception under Colo. Rev. Stat. § 13-90-107(1)(d)(II) to the physician-patient privilege is inapplicable. *Reutter*, 179 P.3d at 981 ("[T]he Reutters bear the burden of establishing that the exception is inapplicable.")

\* \* \*

For all of these reasons, Plaintiffs have waived the physician-patient privilege (assuming it applies) over the matters reflected in Dr. Mengshol's unredacted autopsy report and her associated autopsy examination.[3] IT IS ORDERED Defendants may conduct an *ex parte* interview with Dr. Mengshol limited to the matters reflected in her unredacted autopsy report and her associated autopsy examination.

DATED: February 2, 2021

BY THE COURT:

_S. Kato Crews_
S. Kato Crews
U.S. Magistrate Judge

---

[3] The Court has not seen the autopsy report, but assumes it contains her findings and conclusions based on her autopsy examination.